[No. 29096. Department Two. December 18, 1943.]

*In the Matter of the Application of* ANN ELSIE GORDON *for a Writ of Habeas Corpus.*[1]

[1]Reported in 144 P. (2d) 238.

*C. C. Quackenbush* and *Leslie M. Carroll,* for appellant.

*R. Max Etter,* for respondents.

MILLARD, J.—Ann Elsie Gordon, on behalf of herself and her husband, who was unable to be present for the reason that he was serving in the army of the United States in a distant city, filed a petition in the superior court for Spokane county alleging that the chief probation officer of the juvenile court for Spokane county was wrongfully detaining their minor daughter and unlawfully depriving the parents of her custody. Pursuant to the prayer of the parents' application therefor, a writ of *habeas corpus* issued requiring the probation officer to show the cause of his detention of the body of the minor daughter of the petitioners.

Briefly, the allegations of the petition for the writ of *habeas corpus* are as follows: William F. Gordon and Ann Elsie Gordon were married July 20, 1938. A daughter, approximately four years old at the time of the *habeas corpus* hearing, was born as the issue of that marriage January 27, 1939. As a result of purported adoption proceedings in the superior court for Spokane county August

6, 1939, the child of petitioners was adopted with the consent of its mother by Grace Chiles, a cousin of the child's father, and Charles Chiles. When the child was adopted it was agreed by all parties concerned that, until such time as William F. Gordon and wife were more mature (the wife was then only seventeen years old), they were to be permitted to reside in the same home with the marital community composed of Grace and Charles Chiles and the minor daughter of the petitioners, during which period the natural parents of the child were to have the right of care and companionship of their child. Consonant with that agreement, the petitioners resided with their minor daughter in the Chiles' home, which is immediately proximate to the home of Mrs. Regina Weeks, an aunt of William F. Gordon, and with the exception of a few months the petitioners constantly lived with, cared for, and were with their daughter since her birth.

Grace Chiles died in January, 1940. Prior to her death, Charles Chiles was committed to the Eastern State Hospital at Medical Lake, where he is at the present time. Since January, 1940, the child has been in the custody of her mother and Mrs. Regina Weeks and has received that care and attention which a parent should give to her child.

The child was taken from the custody of Mrs. Weeks by the probation officer in October, 1942, and detained as a juvenile dependent. In his return to the show cause order, the probation officer alleged that he detained the child in question as a juvenile dependent person by virtue of an order of commitment duly made and entered by a superior court judge for Spokane county, acting as judge of the juvenile department of that court.

Counsel for the probation officer objected to the taking of any testimony on the ground that the proceeding by *habeas corpus* was a collateral attack on a valid judgment in the adoption proceeding, and that at the time of the *habeas corpus* hearing the child was in the legal custody of the juvenile court. The objection was overruled by the trial court, which found that the judgment of adoption was

void, as the father of the child never consented to the adoption of his daughter and no endeavor was made to obtain his consent, although the fact of the marriage of William F. Gordon and Ann Elsie Gordon, more than one year prior to the adoption proceeding, was known to counsel who handled that proceeding; that no notice of the hearing on the question of the dependency of the child was ever communicated to the child's father; that the juvenile department refused to entertain the request of the petitioning mother for the custody of her child; that the petitioning mother and her husband and Regina Weeks are fit and proper persons to care for the child; and that the mother is a fit and proper person to have the exclusive care and control of her child. An order was entered directing that the minor child be released to the custody of her mother and that the adoption proceedings be set aside. The probation officer appealed.

On petition (under her maiden name, although she was still the wife of William F. Gordon, whom she married July 20, 1938) of Ann Elsie Gordon (then seventeen years old), who made affidavit that the child was fatherless, the court entered an order August 7, 1939, permitting the adoption of the six months old daughter of William F. and Ann Elsie Gordon by Charles H. Chiles and Grace V. Chiles, husband and wife. The record of the adoption proceeding does not disclose that the father of the minor child was ever given an opportunity to be heard, and there is no showing that he ever consented to the adoption.

Upon the petition of the chief probation officer that the child in question was a juvenile dependent, and after hearing thereon, an order was entered by the juvenile court for Spokane county November 4, 1942, declaring the child to be a ward of the juvenile court to be placed in a suitable boarding home approved by the court, there to remain subject to further order of the court. The juvenile court record shows that Mrs. Regina Weeks was summoned to appear and make such resistance to the petition as she saw fit. Other persons were summoned as witnesses, but neither

the child's father nor the child's mother was afforded an opportunity to resist the petition.

Counsel for appellant probation officer contend that a superior court may not in a *habeas corpus* proceeding, which is a collateral attack upon the judgment, vacate a judgment in an adoption proceeding entered by a court of competent jurisdiction where the proceedings are regular on their face. It is further urged that, where, as in the case at bar, a child is in the legal custody of the juvenile court, another department of the same court may not by a *habeas corpus* proceeding release the child from such custody.

Whatever influenced the immature petitioning mother in the adoption proceeding to make a false affidavit as to the legitimacy of her daughter, is not material and does not foreclose the right of the father of that minor child, which was born in wedlock, hence is legitimate, to challenge the adoption judgment, inasmuch as that court did not have jurisdiction over the father, who was a necessary party to that proceeding. To the petition for the child's adoption, the father was entitled to notice as an essential element to give the court jurisdiction to act upon the petition and render a valid judgment.

Ordinarily, a judgment which on its face shows no jurisdictional defects and is supported by recitals from which it can be inferred that the court has jurisdiction both of the person and the subject matter, is impervious to collateral attack. An attack on a judgment, such as is made in the case at bar, is regarded as a direct attack on the judgment which is permitted, notwithstanding the judgment may appear on its face regular and valid. See *Glansman v. Ledbetter*, 190 Ind. 505, 130 N. E. 230, and Freeman on Judgments, Vol. 1, p. 631, § 316; Vol. 3, p. 3171, § 1546.

Neither parent of the child is estopped from attacking by *habeas corpus* proceedings the judgment of adoption. It is a prerequisite (Rem. Rev. Stat. (Sup.), § 1696 [P. C. § 9813]) to adoption of a legitimate minor that written consent be given to such adoption by each

of his or her living parents. The father may attack the judgment of adoption by *habeas corpus,* for the reason that he never consented to the adoption of his child; in fact, he was not a party to the adoption proceeding. The girl mother who made a false affidavit and consented to the adoption is not bound thereby. In *Furgeson v. Jones,* 17 Ore. 204, 20 Pac. 842, 11 Am. St. 808, 3 L. R. A. 620, it was held that, as the father was never served with notice of the adoption proceeding and did not appear therein, the court was without jurisdiction to render any decree or make any order which could in any manner affect his rights. In answer to the contention that the mother could not make the objection of want of jurisdiction in view of the fact that she consented to the act of adoption, the court held that estoppels to be binding must be mutual, and that, if the father who was a necessary party to the proceeding was not bound by the judgment of adoption, it was not perceived on what ground the same could be held binding on any of the other parties.

In *Beatty v. Davenport,* 45 Wash. 555, 88 Pac. 1109, 122 Am. St. 937, we held that an order for the adoption of children may be collaterally attacked by a parent in a *habeas corpus* proceeding to recover possession, where the parent was not a party to the adoption proceeding and did not have actual or constructive notice of that proceeding.

It is a rule of universal application that, where, as in the case at bar, a parent has not forfeited his rights in relation to his child, he is entitled to notice of proceedings to adopt it, and that in the absence of such notice the proceedings are invalid as against the parent. See annotation 76 A. L. R. 1078 *et seq.*

The argument that the superior court which issued the writ of *habeas corpus* could not determine the question of the custody of the child for the reason that that question had already been determined by a juvenile court, is answered by *State ex rel. De Bit v. Mackintosh,* 98 Wash. 438, 167 Pac. 1090.

In the case cited, a minor child had been adjudged by the

superior court for King county to be a dependent, and an order was entered committing the child to the custody and control of a private school in Seattle to remain there subject to the further order of the court. Approximately two years after the entry of that order, the father of the minor child filed a petition in the superior court for King county for a writ of *habeas corpus,* and an order was issued to show cause why the petition should not be granted. At the time of granting a continuance of the hearing upon the writ, the court announced its intention to sign an order giving custody of the child to the petitioning father pending the hearing upon the application for the writ of *habeas corpus.*

An application was made to this court to prohibit the trial court from entering the order changing the custody of the child pending the hearing. The mother, who opposed changing the custody of the child from the private school to the father, contended that the trial judge was without jurisdiction to enter the order changing the custody of the child, because the child had previously been committed to the private school by another judge who was sitting in the juvenile department of the same court and because the judge in the juvenile department was the only one with authority to modify the order committing the child to the custody of the private school.

We held that, if modification was the proper remedy and if the judge presiding in the juvenile department was the only one empowered to modify the order of commitment of the minor child, the application for the writ of *habeas corpus* might be treated as an application to modify that order, and in that event the proceeding might be transferred by the judge in whose department the application for *habeas corpus* was filed to the judge occupying the juvenile department of that court. We stated that it was plain from the order itself that the commitment of the child to the private school was not a permanent one, and that the superior court of King county had authority to modify the order whenever the circumstances surrounding care and custody of the child might justify such modi-

fication. We cited the statutory provisions (Rem. Rev. Stat., §§ 1987-9, 1987-15 [P. C. §§ 601, 607]) to the effect that, in any case where the court shall award a child to the care of any association or individual, that child shall, unless otherwise ordered, become a ward and be subject to the guardianship of the association or individual to whose care it is committed, but the court retains jurisdiction over such child and shall have power to order a change in the care or custody of such child, and any order made by the court in the case of a dependent or delinquent child may at any time be changed, modified, or set aside, as to the judge may seem meet and proper. We denied the application for the writ of prohibition and held that, under the statute (our present statute Rem. Rev. Stat., § 1063 [P. C. § 8028]), reading as follows, the court was given power expressly to change the custody from one person to another:

"Every person restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus to inquire into the cause of the restraint, and shall be delivered therefrom when illegal."

In the juvenile dependency proceeding, the mother (respondent Ann Elsie Gordon), who had custody and control of the minor child, was not afforded an opportunity to resist the entry of an order finding her child to be dependent and committing that child to the custody and care of some one other than the mother and father of the child. Clearly, the right of the mother and father to attack the order in the juvenile dependency proceeding is not foreclosed, for the reason that that proceeding is void as to them, in view of the deprivation of their right to be heard. Rem. Rev. Stat., § 1987-6 [P. C. § 598]. See *Lewis v. Reed,* 117 Ohio St. 152, 157 N. E. 897.

In a *habeas corpus* proceeding instituted by parents to recover the custody of their minor child, it is incumbent upon the one detaining the body of the child to make a return to the writ and show facts justifying his detention of that child. The fact that the person making the return is an officer of the state and a superintendent of

one of its institutions, will not relieve him from assuming the burden. Where, as in the case at bar, the facts refute the return to the writ and disclose that, under the law, the detention by the probation officer is not justified, the parents are entitled to the judgment entered in the *habeas corpus* proceedings awarding to them the custody of their child which had been committed by the juvenile department of the same court to a boarding home, and the *habeas corpus* proceeding is not a collateral attack upon the commitment. See *Martin v. Vincent*, 34 Idaho 432, 201 Pac. 492.

The evidence amply supports the trial court's finding that the parents are fit and proper persons to have the custody of their minor child. The judgment awarding custody of the minor child to her mother and vacating the adoption proceedings is affirmed.

SIMPSON, C. J., BLAKE, ROBINSON, and MALLERY, JJ., concur.

January 24, 1944. Petition for rehearing denied.