[No. 57592-4.    En Banc.    July 3, 1991.]

THE STATE OF WASHINGTON, *Petitioner*, v. ROBERT
McCORMACK, *Respondent*.

*Kenneth O. Eikenberry, Attorney General,* and *Paul D. Doumit* and *Fronda C. Woods, Assistants; Timothy J. Ohms, Prosecuting Attorney,* for petitioner.

*Phillip E. Katzen,* for respondent.

JOHNSON, J. — Robert McCormack, a member of the Nez Perce Tribe, sold elk meat in violation of state wildlife law. The District Court found McCormack guilty. The Superior Court overturned the conviction, concluding that McCormack acted legally within the rights granted to him under a Nez Perce hunting treaty. The State, on appeal, argues that its statute is a necessary conservation measure. As such, the State contends that its statute may regulate activities protected under federally granted treaty hunting rights. The Court of Appeals granted discretionary review. This court accepted certification for review pursuant to RCW 2.06.030.

Shortly after the Court of Appeals granted review, the Ninth Circuit issued its decision in *United States v. Williams,* 898 F.2d 727 (9th Cir. 1990). In *Williams,* the Ninth Circuit held that the federal government meets its burden of establishing that a statute is a necessary conservation measure when the government shows that a defendant's tribal law contains a similar provision.

The primary issue in this appeal is whether *Williams* also permits a state to use tribal provisions to prove the conservation necessity of its own statutes. We hold that *Williams* applies to both state and federal prosecutions. Because the State established under *Williams* that its statute is a necessary conservation measure, we reverse the Superior Court and reinstate McCormack's district court conviction.

■ Our analysis begins with the standard of review. De novo review is appropriate because the issues in this case involve solely questions of law. *See Williams*, at 729.

McCormack was charged with violating RCW 77.16-.040. At the time of McCormack's acts, the statute read as follows:

> Except as authorized by law or rule of the commission, *it is unlawful to* bring into this state, offer for sale, *sell*, possess, exchange, buy, transport, or ship *wildlife* or articles made from an endangered species. . . .

(Italics ours.)[1]

■ The defendant asserts that a Nez Perce hunting treaty protects him from prosecution under RCW 77.16-.040. Federal treaties granting tribal hunting rights are acts of Congress. As such, the supremacy clause bars state statutes from affecting tribal hunting rights. *Antoine v. Washington*, 420 U.S. 194, 204, 43 L. Ed. 2d 129, 95 S. Ct. 944 (1975); U.S. Const. art. 6, cl. 2. A state may, however, regulate acts protected by treaty rights when the state shows that its regulation is necessary for wildlife conservation. *Antoine*, at 207; *Williams*, at 729.[2]

The Ninth Circuit has held that the federal government, when enforcing a state wildlife statute under the

---

[1]Since the defendant's actions, the Legislature has deleted reference to the commission. Laws of 1987, ch. 506, § 60. The statute remains the same in all other aspects.

[2]These cases also require the State to show that the regulation it seeks to enforce is reasonable and does not discriminate against Native Americans. *Antoine*, at 207. The only issue raised in the briefs below and in this court, however, was that of conservation necessity.

Lacey Act, establishes that the statute is necessary for wildlife conservation when it shows that the defendant's tribal law includes a similar conservation measure. *Williams*, 898 F.2d at 729-30; *United States v. Sohappy*, 770 F.2d 816, 824-25 (9th Cir. 1985). Tribal wildlife laws are presumed to serve conservation purposes. *Williams*, at 729 n.2. Accordingly, tribal enactment of a similar wildlife measure establishes that conservation is necessary even with respect to tribal activities. As the Ninth Circuit reasoned, "[t]he requirement of a full hearing to establish the validity of the state wildlife laws is superfluous if, as in this case, the tribe enacted similar laws which are clearly valid." *Williams*, at 729.

█ We must decide whether *Williams* applies to state governments enforcing their own statutes in state court. *Williams* and other federal Court of Appeals opinions construing federal law are "entitled to great weight" in the state courts. *See Home Ins. Co. v. Northern Pac. Ry.*, 18 Wn.2d 798, 808, 140 P.2d 507, 147 A.L.R. 849 (1943). Here, the federal law being construed is the supremacy clause of the United States Constitution.

McCormack argues that *Williams* is distinguishable because it applies only to federal prosecutions. *Williams*, however, involved the validity of *state* statutes that were being enforced by the federal government under the Lacey Act.[3] McCormack presents no reason why a different showing should be required when a state seeks to enforce its own statute in state court. *Cf. Sohappy*, at 823-24 (holding that when the federal government seeks to enforce a state statute through the Lacey Act, the government must make the same showing that a state would have to make to enforce the statute).

█ McCormack also contends that *Williams* does not apply to this case because the Ninth Circuit decided

---

[3]The Lacey Act provides that: "It is unlawful for any person . . . to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce . . . any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State . . . .." 16 U.S.C. § 3372(a)(2)(A).

*Williams* after McCormack's conviction. *Williams*, however, involves a constitutional ruling in a criminal case. It therefore applies retroactively to this case on direct review. *See Griffith v. Kentucky*, 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987).

■ We conclude that *Williams* is fully applicable in state court prosecutions. Under that standard, we must now determine if the State showed the existence of a tribal law similar to RCW 77.16.040.

The State relies on the following tribal provision:

No person shall:
1. *Sell*, or have in his possession with intent to sell;
2. Expose or offer for sale;
3. Ship for commercial purposes or have in his possession with intent to ship for commercial purposes, *any big or small game* or fish *or parts thereof*, killed, captured or taken pursuant to any hunting or fishing treaty rights, *provided*, that this Section shall not apply to off-Reservation commercial fishing activities nor the possession or sale of hides of game animals lawfully taken.

(Italics ours.) Section 3-504 of the Nez Perce Tribal Law and Order Code. This Tribal Code section is similar to the statute the State seeks to enforce. Both section 3-504 and RCW 77.16.040 serve to prohibit the sale of elk meat.

McCormack contends that section 3-504 of the Tribal Code is unconstitutionally vague and therefore cannot be used to prove that RCW 77.16.040 is necessary as a conservation measure. *Williams* resolves this argument as well. *Williams* also involved section 3-504 of the Nez Perce Tribal Law and Order Code. The Ninth Circuit concluded that the tribal law clearly applied to prohibit commercial hunting, including the sale of meat from a hunted animal. *Williams*, 898 F.2d at 729 n.3. We concur in this conclusion.

McCormack supports his vagueness argument with a federal district court case in which he also was the defendant, *United States v. McCormack*, cause CR-87-220-S (W.D. Wash. Aug. 8, 1988). *McCormack* also involved

section 3-504 of the Nez Perce Code. In *McCormack*, the court held that the provision relating to off-reservation commercial fishing activities was vague. Section 3-504 has no similar provision addressing *hunting* activities.

The District Court found troubling the tribal prohibition against the sale of "fish . . . taken pursuant to . . . fishing treaty rights." Section 3-504. The jury in *McCormack* found that the defendant had taken fish in violation of tribal law. The court questioned whether fish taken in violation of tribal law could be deemed to have been taken pursuant to fishing rights.

██ The lower courts in this case did not find that the defendant took the elk in violation of tribal law. Accordingly, any vagueness problems existing in the federal district court case do not exist here. The tribal provision clearly applies in the context of this case. McCormack cannot challenge section 3-504 on the grounds that the provision might be vague in other contexts. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7, 71 L. Ed. 2d 362, 102 S. Ct. 1186 (1982).

We conclude that the State has established under *Williams* that RCW 77.16.040 is a necessary conservation measure. Although this conclusion resolves the primary issue in this case, we will respond briefly to two additional arguments McCormack raises in challenging the enforcement of RCW 77.16.040.[4]

McCormack argues that the commerce clause prohibits his conviction. He cites *Pioneer Packing Co. v. Winslow*, 159 Wash. 655, 294 P. 557 (1930) for the proposition that the commerce clause prevents the State from regulating

---

[4] We do not address a number of other arguments that each of the parties raised for the first time in statements of additional authority and at oral argument. These issues were not considered in the courts below and they have not been adequately briefed. *See* RAP 2.5(a); *State v. Elliott*, 114 Wn.2d 6, 15, 785 P.2d 440 (1990).

the sale of game acquired by Native Americans under treaty rights. The court in that case, however, held only that a state cannot prohibit Native Americans from engaging in the interstate sale of wildlife if that sale is allowed within the state. *See State v. Stritmatter*, 102 Wn.2d 516, 522, 688 P.2d 499 (1984). The commerce clause and *Pioneer Packing Co.* are inapplicable here since RCW 77.16.040 makes no distinction between intrastate and interstate sales of wildlife.

McCormack also argues that RCW 77.16.040 cannot be applied in this case because Judge Boldt declared this statute invalid in *United States v. Washington*, 384 F. Supp. 312 (W.D. Wash. 1974), *aff'd*, 520 F.2d 676 (9th Cir. 1975), *cert. denied*, 423 U.S. 1086 (1976) (the "Boldt decision"). In that case, Judge Boldt concluded that RCW 77.16.040 and a number of other statutes and regulations were invalid as overly broad. These provisions regulated wildlife in general rather than particular species of wildlife.[5] *United States v. Washington, supra* at 388, 403.

Judge Boldt did not explain, however, why wildlife conservation statutes should be species specific. The federal courts have since upheld state statutes as necessary conservation measures when the statutes applied generally to game animals or wildlife rather than to specific species. *Antoine*, 420 U.S. at 196 (interpreting statutes on game animals); *Williams*, 898 F.2d at 728 (interpreting statutes on game animals and a statute on wildlife). Under these cases, the enforceability of the state conservation statutes depends in no way on the specificity of the

---

[5] Judge Boldt also concluded that the government failed to show that RCW 77.16.040 and other laws were necessary measures for conserving anadromous fish. *United States v. Washington, supra* at 404. This conclusion clearly has no relevance to the present case. Whether the government could show that anadromous fish in the mid-1970's needed state conservation measures has no bearing on whether the State can now prove that the elk population needs state protective measures.

language in those statutes. Accordingly, we decline to extend Judge Boldt's requirement of species specificity beyond the facts of that particular case.

RCW 77.16.040 is fully enforceable in this case. We reverse the Superior Court and reinstate McCormack's conviction.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.

Reconsideration denied August 29, 1991.